### SAMPSON & MURDOCK CO. v. SEAVER-RADFORD CO.

(Circuit Court of Appeals, First Circuit. November 23, 1905.)

No. 583.

1. COPYRIGHT—SUIT FOR INFRINGEMENT—FORM OF INJUNCTIONAL DECREE.

Where, on the trial of a suit for infringement of a copyrighted city directory, the court found that defendant's directory contained certain infringing matter, but it was of such character that it could be separated from the original matter, a decree is proper which merely restrains the sale of defendant's directory only so long as it contains any of the infringing matter therein enumerated.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, §§ 78–80.]

2. SAME—INFRINGEMENT—DIRECTORIES.

Complainant published a general directory of the city of Boston in July, 1903, purporting to give facts as they existed in the spring of that year, and which was duly copyrighted. In February, 1904, defendant published a general directory of the city, which purported to give the facts as they existed just prior to that time. After completing its original canvass for names, defendant copied on slips from complainant's directory such names there printed as it had not obtained in its own canvass, with the information given about them, and with such slips as a guide it verified them by sending canvassers to the addresses given therein, and, when found correct, reprinted the same without alteration in its own directory. *Held*, that such republication was an infringement of complainant's copyright.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 55.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 134 Fed. 890.

Alexander P. Browne and Samuel J. Elder, for appellant.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. This controversy relates to an alleged infringement of a copyrighted city directory. The complainant below is also the appellant, so that we can, without further discrimination, describe it as the complainant, and also the appellee as the respondent. The facts are quite voluminous, but the points raised before us are only two, and require only a brief preliminary statement. The complainant published a general directory of the city of Boston in July, 1903, which was duly copyrighted. The entire title of the book as filed in the Copyright Office is not given us; but we understand that it was described, and properly described, as a general directory of the city of Boston of 1903. The respondent published in February, 1904, what is described as "the 1904 City Directory

of Boston." It was also a general city directory, intended for the same general purposes as the complainant's directory. It should be noted, however, that the complainant's directory purported to give the facts as they existed in the spring or early summer of 1903, and the other the facts as they existed in the late winter and spring of 1903 and 1904. Therefore, literally speaking, the two directories were not intended to serve exactly the same purpose, or to state exactly the same facts. This should be noted, because the opinion of the learned judge who decided the case in the Circuit Court seems to turn on it. The respondent had evidently constructed portions of its directory by simply reproducing corresponding portions of the complainant's directory. So far as those are concerned, the Circuit Court restrained the sale of the respondent's directory so long as it contained the matters enumerated in the decree.

The complainant maintains that the decree should direct a general injunction, permitting the respondent to apply again in reference thereto when it should have expunged all matter copied from the complainant's work. This form of decree would not be an unusual one; but, for this case, we can see no sufficient distinction in substance between it and that which the court entered to require our attention, while, on the other hand, the decree entered is clearly more convenient, because it finally disposes of the case and relieves the court from a reconsideration of it. In this we have reference to the particular case before us, where the infringing portions of the respondent's publication have been clearly pointed out. Of course, instances might easily be conceived where the infringing book was piratical in its general nature, or contained piratical matter so mingled with original work that the entire publication should be suppressed; but no proposition of that kind is brought before us.

The second ground of appeal arose as follows: The case proceeded on the assumption by both parties that the complainant's directory was made from an original canvass carried on by it, the cost of which can be estimated from the fact that the respondent alleged that its canvass involved much labor, at an expense of some $40,000. The respondent, after making its canvass, ascertained from the complainant's directory that it had overlooked some names and had not obtained correct information in reference to others. Thereupon it took the pages of the complainant's directory, one by one, and marked those names. These names and the information about them were then copied verbatim, each upon a separate slip of paper. These slips were given by the respondent to its canvassers and sent out for verification at the various addresses stated in complainant's directory, and, on the return of that verification, were printed in the respondent's directory so far as found to be correct. There were altogether about 20,000 names thus made use of, stated as 12 per cent. of all in the alphabetical part of the directory. The complainant maintains that, so far as these names and the information about them were reprinted in the respondent's directory as printed in the complainant's directory, the printing constituted an infringement. The learned judge of the Circuit Court thought otherwise, observing,

among other things, that what was done amounted to something more than mere verification. He added:

"For example, let us suppose that in July a publisher is obtaining information upon which he proposes to publish a directory. He takes an old directory, which had been compiled the preceding January. In that directory it appears that John Smith was, in January, a lawyer at No. 1 Tremont street. With the information contained in the January directory, the compiler of the July directory goes to No. 1 Tremont street on July 1st, and finds that John Smith is a lawyer, and that he has at that date an office at No. 1 Tremont street. The directory maker has a right to publish this information in his July directory. He cannot be precluded from so publishing it by the fact that the maker of the January directory has stated, that the same facts existed in the preceding January. The maker of the January directory may or may not have stated the truth as to John Smith at that time; but the compiler of the July directory may, in his directory, state the facts as they exist on July 1st relating to John Smith, whether those facts existed or not the previous January, and whether they were stated or not in the January directory. The compiler of the July directory is not merely verifying and quoting. He is obtaining facts from original sources, using the old directory only to guide him to those sources. Facts so obtained he may publish in his compilation. He cannot be prevented from such publication by the fact that the same things were true in January, and were stated by a former compiler."

The appeal before us affects a large number of names; and, if no relief can be granted under the present circumstances, the conditions would be such that it would be difficult to give the owners of copyrighted directories any effectual protection except in extreme instances. It is evident that, while the complainant's copyright was in full force, the respondent copied and identically republished very considerable portions of its directory. On the other hand, it cannot be questioned that the second publisher, although he gives out exactly the same words as the first publisher, is, nevertheless, within his legal right, provided he resorts independently to the same originals that the first publisher went to. He may, indeed, even make use of the same phraseology, either because the topic necessarily requires it or through mere incidental coincidences of expression. So, also, it is clear that, under some circumstances and for certain purposes, a subsequent publisher may draw from the earlier publication its identical words, and make use of them. This is peculiarly so with reference to works in regard to the arts and sciences, using those words in the broadest sense, because, with reference to them, any publication is given out as a development in the way of progress, and, to a certain extent, by common consent, including the implied consent of the first publisher, others interested in advancing the same art or science may commence where the prior author stopped. This includes medical and legal publications, in which the entire community has an interest, and which the authors are supposed to give forth, not only for their own pecuniary profit, but for the advancement of science. Therefore, as to copyrighted works of that character, by the common consent to which we have referred, subsequent authors are sometimes entitled, and, indeed, required, to make use of what precedes them in the precise form in which last exhibited, so that with regard to them the rules under the copyright statutes are very far from fitting a case like that we are now considering.

Therefore we do not find it necessary to discuss judicial decisions having relation only to those classes of publications.

Also, instances may be easily cited where portions of a copyrighted book may be published for purposes other than those for which the original book was intended. This may be particularly so where the second publication has an entirely different outlook from the first. Clearly, in a philosophical work, the title "The Martian," if it can be copyrighted, could not be regarded as infringing a work of mere imagination with the same title. So it may be that the copying and rearranging of a general directory for a bona fide and limited purpose, such as compiling a social guide, may come within the same rule. So, also, it may, and probably would, be permissible for an extensive dealer in any class of goods to gather together from a local or general directory names and addresses, and print them for the use of its agents seeking trade. Other illustrations may easily be suggested; some of them so far sustained by the common practice that, with appropriate limitations, they may be presumed to have received in advance the assent of the proprietors of the copyrighted publication. Copinger's Law of Copyright (4th Ed. 1904) 155 et seq.; Macgillivray's Law of Copyrights (1902) 102.

Directories and works of like character have been specifically protected, at least since Lewis v. Fullarton, 2 Beav. 6, decided in 1839, and that they are to be protected is now firmly established. Where they have been prepared like the complainant's directory, by original canvassing or other original work, especially at considerable expense, the rule, both at the beginning and at the end, is laid down in general terms as follows:

In the beginning, in Lewis v. Fullarton, ubi supra, Lord Langdale, referring to a gazetteer, said, at page 8:

"Whilst all are entitled to resort to common sources of information; none are entitled to save themselves trouble and expense by availing themselves, for their own profit, of other men's works still subject to copyright and entitled to protection."

Also, at the end, in 1874, in Hogg v. Scott, L. R. 18 Eq. 444, 458, referring to a copyrighted compilation for the use of fruit-growers, Vice Chancellor Hall, after citing Morris v. Wright, L. R. 5 Ch. 279, and Kelly v. Morris, L. R. 1 Eq. 697, said:

"The true principle in all these cases is that the defendant is not at liberty to use or avail himself of the labor which the plaintiff has been at for the purpose of producing his work; that is, in fact, merely to take away the result of another man's labor, or, in other words, his property."

Ager v. Peninsular & Oriental Steam Navigation Company, 26 Ch. D. 637, 642, in 1884, in reference to the infringement of a "Standard Telegram Code," laid down the following rule:

"Applying the usual test, it seems to me that the plaintiff must have expended a great deal of time and labor in this compilation, that what the defendants are doing is to avail themselves very largely and unnecessarily of the labor and research of the plaintiff without adequately recompensing him, that the use which the defendants make of their book is calculated to interfere seriously with the sale of plaintiff's book, that it is a multiplying of copies of the plaintiff's book within the words of the copyright act, and

that it is therefore an invasion of the copyright of the plaintiff against which he is entitled to be protected."

Putting the rule broadly, as applying to all copyrighted works, in Walter v. Lane (1900) A. C. 539, 545, the Lord Chancellor, Lord Halsbury, observed:

"I should very much regret if I were compelled to come to the conclusion that the state of the law permitted one man to make profit and appropriate to himself the labor, skill, and capital of another. * * * In the view I take of this case, I think the law is strong enough to restrain what to my mind would be a grievous injustice."

Indeed, the whole is well summed up by Mr. Justice Clifford in Lawrence v. Dana, 4 Cliff. 1, 83, Fed. Cas. No. 8,136, as follows:

"Examined as a question of strict law, apart from exceptional cases, the privilege of fair use accorded to a subsequent writer must be such, and such only, as will not cause substantial injury to the proprietor of the first publication."

We are not now considering the cases we have cited with reference to their particular facts, but only with regard to the rules which we have extracted from them. Several of them have express relation to compilations of the character before us. All were announced by judges of acknowledged ability, learning, and experience, and are in harmony with the equitable principles everywhere applied, both in the United States and England, under the copyright statutes. The case at bar is within them, unless it can be brought under some of the exceptional rules, including the one suggested by the learned judge who sat in the Circuit Court. What the respondent has done is clearly a republication of the complainant's copyrighted matter. With reference to each name, the words and the arrangement of the words were primarily taken from the complainant's directory, and they were republished in the respondent's directory. It is true that the words thus taken from the complainant's directory, having been "slipped," as it were, passed through the hands of canvassers; but this was not original work. It was only a verification of what was found in the complainant's directory, so that this incidental work only completes and makes certain the connecting link between the two publications. Therefore we start with what, on its face, is infringing matter.

Can the case be brought within any of the exceptional rules? The suggestion made by the learned judge of the Circuit Court, arising out of the fact that each of the two directories has a different outlook, in having a different date of publication, does not seem to have received any support from any of the decided cases whatever the result of each. On the other hand, while none of them has expressly referred to this suggestion, all or nearly all of them disregard it, and thus, by implication, indicate that the distinction arising out of the fact of differences of time to which the directories in question have relation is not a substantial one. Certainly the injury which such republications inflict on the owners of copyrighted directories, and the undermining of the markets of the original publishers arising therefrom, if permitted, may be so serious that it is impossible to assume that the use to which the respondent put the complainant's

publication, in the manner we have expressed, is within any implied consent, such as we have said attaches with regard to copyrighted matter. We accept this from that common knowledge which we, as triors of the facts in equity suits, are entitled to share in, and because no suggestion of that nature appears in the record. Therefore we find the extensive republication injurious in its nature, and not excused either by any implied consent or otherwise.

Aside from the general rules which we have shown are fully established, there are no authorities which are individually of a conclusive nature, and no such body of authorities, either in the way of text-writers or decisions of the courts, as requires us to explain them at length, or renders it desirable that we should do so. Those which pertain to the classes of authors which we have named as treating of the arts and sciences, or either, are not close enough to the case at bar to answer as precedents with reference to the particular facts before us. Edward Thompson Co. v. American Law Book Co., 122 Fed. 922, 59 C. C. A. 148, 62 L. R. A. 607, is of those classes; so that, while we probably would not dissent from the conclusions therein reached, which relate to legal encyclopædias, we have no occasion to follow the line of reasoning which the opinion contains, or to point out whether or not it has given an accurate analysis of the authorities cited in it in the light of such facts as we have before us. Also, we have no occasion to discuss at length particular decisions of the English courts. They will be found grouped and explained, so far as they have reference to works of the character before us, in Scrutton's Law of Copyright (4th Ed., 1903) 120, 121, and in Copinger's Law of Copyright (4th Ed., 1904) 166, 167. In Kelly v. Morris, L. R. 1 Eq. 697 (1866), Vice Chancellor Wood, of great learning and authority on questions of this character, apparently laid down the law so broadly as to cover the respondent if it had only gone to the complainant's directory for the mere purpose of copying out information to aid it in any way in preparing its alleged infringing directory; and he, apparently, intended to cover even a case of that character. In Morris v. Wright, L. R. 5 Ch. 279, 285 (1870), Lord Justice Giffard, however, limited what was apparently Vice Chancellor Wood's ruling, by stating that he only intended that the subsequent publisher might not take a particular slip and show it to the particular person whose name was concerned, and get his authority as to putting that particular slip into his directory. It is quite difficult to understand the importance of the distinction thus made by Lord Justice Giffard. Very likely it was his opinion that, as in a general way a directory may be said to be intended to give all the information which may be found between its covers, any use of that information was lawful, except subject to the narrow limitation which he himself expressed. This view, however, ought not to be taken with its full sweep. The proper purpose of the usual alphabetical directory is to afford a searcher information of the residence, occupation, and other details of the particular person whom he desires to investigate. It cannot be said that it is within the proper purpose of such a work that any one should use it for correcting his own book of like character in a general way. From a proper standpoint, especially from the

view so correctly expressed by Mr. Justice Clifford in what we have cited from him, it clearly was not the implied intention that a copyrighted directory should be used in the manner pointed out by Lord Justice Giffard. Nevertheless, even within his rule, the respondent is to be condemned—a fact which, perhaps, was not carefully brought to the attention of the learned judge in the Circuit Court; but it is now brought to ours by the statement of the complainant that the slips taken from its directory, of which we have spoken, were sent out for verification at the several addresses which they contained. Although this was not directly stated by the master, it is clearly deduced from the fact that he reported that the use to which the respondent put the complainant's business directory was similar to that claimed to have been made of the complainant's alphabetical directory; that is to say, that, as to the latter, the respondent, using the slips, went to original sources of information, verified the information contained on the slips, or corrected it where it should be corrected, and transferred to its directory the information so verified or corrected. The master made further incidental statements in the same connection, and also made a specific ruling at the request of the respondent, which seem to fully support this deduction.

The decree of the Circuit Court is reversed, the case is remanded to that court for further proceedings, and the appellant recovers its cost of appeal.