## DEUTSCH et al. v. ARNOLD et al.
### No. 348.

Circuit Court of Appeals, Second Circuit.
July 25, 1938.

Morton A. Roth, of New York City (Max Chertok, of New York City, of counsel), for appellants.

Shon & Chachkes, of Yonkers, N. Y. (Edward S. Higgins, of New York City, and Myron J. Shon, of Yonkers, N. Y., of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiffs sued for infringement of a copyright of a chart for analyzing handwriting and prayed for an injunction and damages. The District Court dismissed the bill on the ground that the chart lacked originality and was not a proper subject for a copyright.

The chart consists of a sheet of paper measuring about 8½x11 inches. At the top of the sheet appears the title, a number and the copyright notice, as well as an explanation of how the chart is to be used. The remainder of the sheet is divided by lines into 22 rectangular subdivisions, each of them has a heading generally descriptive of a specimen of handwriting which is inscribed beneath, such as "round", "size", "plain", "open", "slant". In the space just below each specimen are words describing the supposed individual characteristics of persons having the kind of handwriting that is superposed. For example, in the subdivision where the heading is "round" there is a specimen of round handwriting and below it character descriptive words: "Good natured. Peace loving. Calm. Gentle. Leisurely". The explanation at the top of the chart telling how to use it is as follows:

"Compare any handwriting you wish to use with any handwriting shown below. As you find the similarity, read the meaning underneath. Thus by going thru the entire list, you will have a well rounded, accurate character reading. The degree of strength or weakness is emphasized according to the number of times the various characteristics appear."

Counsel for the plaintiffs gives the following description of the way to use the chart:

"The analyzer regards each subdivision of the chart and if he determines that the writing is 'round' as opposed to 'pointed', he checks 'round'. He further regards the chart and should he find that the letters are 'large' as opposed to 'small' he will check 'large'. He will so proceed through the whole 22 subdivisions and thereby will have completed his analysis."

"In the event that the analyzer is in doubt as to the particular classification that his writing falls under, the chart further aids him by illustrations in each subdivision of the styles described by the subdivision heading."

The plaintiffs have exploited their charts in department stores and amusement centers.

In the former they have been particularly used to draw customers to the stores and in the latter for amusement purposes. In each, charts are sold and in each demonstrators are installed to make a character analysis by obtaining specimens of handwriting from the customers and checking the handwriting with the chart and to sell the charts. They have met with considerable commercial success.

The defendant Mildred Arnold was employed by the plaintiffs in the summer of 1936 and managed one of their booths at Coney Island, where she was taught their system, and sold their charts. In May, 1937, she opened a booth of her own having the advertising sign: "Have your handwriting analyzed", in Steeplechase Park, where the plaintiffs also had a booth. There she sold her own charts until, upon the plaintiffs' objections, she was excluded, whereupon, in June, she opened a booth outside the Boardwalk, about a block away from the plaintiffs' booth, in space leased for $200 from the defendant Dorothy Dworman, doing business under the name of Irving Baths, through the defendant George Bernart, Dworman's renting agent. There Miss Arnold sold charts and analyzed handwriting.

While the trial judge held that the plaintiffs' chart was not a proper subject of copyright he made the following finding: "The defendants' chart is undoubtedly to all intents and purposes a copy of the plaintiffs' chart. In principle they are very much alike. If the plaintiffs' chart was a proper subject of copyright defendants' chart would infringe."

We think there can be no doubt of infringement. It is true that Miss Arnold's chart did not contain specimens of handwriting in the rectangular subdivisions, but each subdivision had a heading generally descriptive of a type of handwriting and beneath the heading adjectives, many of which corresponded with those of the plaintiffs' chart, indicating the individual characteristics of persons having the kind of handwriting suggested by the heading. General correspondence in form exists and close correspondence in detail is found again and again. In nearly all of Miss Arnold's subdivisions she used some of the descriptive adjectives employed by plaintiffs in a corresponding subdivision.

The trial judge correctly said in his opinion:

"Defendant Arnold had been employed by the plaintiffs and undoubtedly worked out a chart as a result of the knowledge she obtained while in the employ of the plaintiffs".

The principal question is whether the copyright is valid. As to this we are clear that the trial judge was in error. Section 4 of the Copyright Act, 17 U.S.C.A. § 4, provides that: "The works for which copyright may be secured under this title shall include all the writings of an author." Section 5, 17 U.S.C.A. § 5, sets out different classes of works for registration so that an author in his application may claim the class to which his own work belongs, but that section distinctly provides that the specifications "shall not be held to limit the subject matter of copyright as defined in section 4, * * * nor shall any error in classification invalidate or impair the copyright protection secured under this title". Rule 4 of the Copyright Office provides that "the term 'book' as used in the law, includes tabulated forms of information frequently called charts * * * ". The list given in Section 5 specifying classes for registration begins with "books". Under the rule of the Copyright Office plaintiffs' chart would seem to be a book, but whether a book or not it certainly comes within the definition of "all the writings of an author" described in Section 4 which is not limited to the classes in Section 5 because of the express terms of the latter section.

The chart plaintiffs devised was plainly their own embodiment and arrangement of information derived from numerous sources. Many of the ideas appear in "Graphograms"—an English work having a very different arrangement and requiring the use of a volume to obtain information found in plaintiffs' chart on a single sheet. There are many differences in detail between the two works and there is no evidence that plaintiffs copied from "Graphograms", but quite the contrary. We think their chart was an arrangement and combination in new form and was clearly an original work within the meaning of the copyright law. National Institute, Inc., v. Nutt, D. C., 28 F.2d 132, 135, affirmed in 2 Cir., 31 F.2d 236. The defendant Arnold had access to it and while she claims the ideas and even the embodiment of her infringing chart were all her own, she does not say how she came to develop one so similar to plaintiffs'. The similarities between the two charts both in general form and in detail indicate a deliberate appropriation on her part. We hold the copyright valid and infringed by the defendant Arnold.

In respect to the defendant Dworman and her agent Bernart, there is no proof of any acts of infringement on the part of either. They were not partners of Miss Arnold. They received nothing, and were not entitled to receive anything through her acts of infringement, and there is no proof that either of them knew that acts of infringement were proposed at the time when the lease was made. Something more than the mere relation of landlord and tenant must exist to give rise to a cause of action by plaintiffs against these defendants for infringement of their copyright on the demised premises.

Decree reversed as to the defendant Mildred Arnold and affirmed as to the defendants Dorothy Dworman and George Bernart.