**OXFORD BOOK CO., Inc., v. COLLEGE ENTRANCE BOOK CO., Inc., et al.**
**No. 380.**

Circuit Court of Appeals, Second Circuit.
July 29, 1938.

Stanley Garten, of New York City, for appellant College Entrance Book Co., Inc.

Griggs, Baldwin & Baldwin, of New York City (Peter F. McAllister and Stanley Garten, both of New York City, on the brief), for appellants Fraser and Pikholtz.

Gray & Grossman, of New York City (Herman A. Gray and Sidney R. Fleisher, both of New York City, of counsel), for appellee Oxford Book Co.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The complaint originally charged the defendants with infringement of the plaintiff's statutory copyright on a book entitled "Visualized American History" written by Philip Dorf and first published by the plaintiff in October 1933. During the trial in the District Court for the Southern District of New York, the complaint was amended at the suggestion of the trial judge to include a charge of unfair competition. See, Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. After hearing, the complaint was dismissed as to defendants Downes and Donovan; defendants Fraser and Pikholtz were found to have infringed the copyright and they have appealed; defendant College Entrance Book Company, Inc., was found guilty of unfair competition and also of infringement and it has appealed.

Both the plaintiff and the corporate defendant are book publishers in the Southern District of New York. Both have published history outlines intended primarily for use by students and teachers. Before the above-mentioned book of the plaintiff was published, it had published other condensed books on history and so had the corporate defendant especially one by Lamm entitled "American History and Civics". The outstanding difference between the older books of both and the copyrighted work in suit were the so-called cartoon illustrations in the latter.

"Visualized American History" as published by the plaintiff was paper bound in a cover predominantly reddish in color with the name of the author and that of the publisher prominently displayed. The accused book is entitled "Visualized Units in American History" and, as published by the corporate defendant, was paperbound and about the size of the plaintiff's book but otherwise in outside appearance they were in marked contrast. The color of the defendant's cover was a sort of lemon yellow; it had cover illustrations entirely different from those on the plaintiff's cover both front and back and also on the front cover the names of the authors; that of the man who acted as supervisor; and that of the publisher.

Unfair competition was found only in the use of the word "visualized" and obviously could have been found in no other respect. But even as to that no unfair competition was shown. "Visualized" is merely a descriptive word in the English language which the plaintiff cannot appropriate to its own use in connection with history books and exclude the corporate defendants' right to a similar use without proof that the plaintiff's use has been of such duration and character that it has acquired a secondary meaning. Downes v. Culbertson, 153 Misc. 14, 275 N.Y.S. 233. Such proof was lacking here. There was an approach to proof that the two books had been somewhat confused in the minds of buyers but it is doubtful whether that was due to more than mere carelessness. There can be no reasonable likelihood of confusion in view of the decided differences in general appearance; and the display of the names of the authors and of the publisher. See, Kaeser & Blair, Inc. v. Merchants' Ass'n, 6 Cir., 64 F.2d 575. Since there was a failure to prove a secondary meaning for the word "visualized" and it is fairly descriptive of the corporate defendants' book there has been no unfair use of it. The decree in so far as it relates to unfair competition will, accordingly, be reversed.

As to the claimed infringement of the statutory copyright the situation is somewhat different. The validity of the copyright is unquestioned. It did not cover the use of the word "visualized" in the title, Warner Bros. Pictures v. Majestic Pictures Corp., 2 Cir., 70 F.2d 310, but it did include the book itself together with the arrangement of charts, tabulations

and what have been called cartoon illustrations designed to bring information readily to the reader's mind. See Adolph M. Deutsch et al. v. Mildred Arnold et als., 2 Cir., 98 F.2d 686.

It was after the plaintiff published "Visualized American History" that the president of the corporate defendant soon became aware of its success and desired to publish a book better able to compete with it than any he then had. He showed the plaintiff's book to Downes, Fraser and Pikholtz who were high school teachers, and arranged with them to write one for his company to publish. Dr. Herbert D. A. Donovan, long a history teacher in New York City high schools and elsewhere, and chairman of the history department in the Bayside High School, was engaged to supervise the work. Access to the plaintiff's book is admitted but there was substantial evidence to the effect that the defendant authors wrote from memory and from sources other than that book. The first five chapters carrying the work up to the reconstruction period after the Civil War were written by Pikholtz; chapters six, seven and eight were written by Fraser; and Downes wrote the last three chapters which the plaintiff now concedes contain nothing that infringes its copyright. Nor does it now claim that Donovan in any way infringed.

Much stress is laid by the plaintiff upon so-called common errors of fact appearing in both books. There are, indeed, some; enough to make it clear that the defendants Pikholtz and Fraser adopted for their own use either erroneous or at least somewhat misleading statements in regard to historical facts appearing in the copyrighted book. But that only served to show use of the plaintiff's book and not necessarily that what they wrote infringed the copyright, for historical facts are not copyrightable per se nor are errors in fact. The plaintiff's book was designed to convey information to the reader. The defendant authors were as free to read it as anyone else and to acquire from it such information as they could. They could, indeed, with equal right obtain such misinformation as it contained, for the copyright gave no monopoly of the contents of the book. Arnstein v. Edward B. Marks Music Corp., 2 Cir., 82 F.2d 275. And so far as plaintiff's copyright is concerned, they could use whatever of either character they gleaned from the book in their own writing provided they did not copy any substantial part of the copyrighted work but created something distinctly their own. This does not necessarily mean something other than what has been "put into words" in the copyrighted work for then an accurate and comprehensive treatise on algebra, for instance, would if copyrighted prevent another from later writing one as accurate and comprehensive during the copyright term. The true concept of what a copyright covers as well as what it does not was given by Judge Learned Hand in Arnstein v. Edward B. Marks Music Corp., supra, when he said, "The 'sole liberty of printing, publishing and vending' the 'work' means the liberty to make use of the corporeal object by means of which the author has expressed himself; it does not mean 'the sole liberty' to create other 'works', even though they are identical". This applies with especial force to works on the same period in history. The subject matter is of necessity what events have made it and the order of treatment whether that be chronological or topical is fixed by the facts. Even the somewhat limited matter of selection is curtailed in such condensed works, designed for elementary school study, as those with which we are here concerned.

For the foregoing reasons no need exists for analyzing in detail the fairly numerous places in the text in each book where substantially the same thing on the same subject has been said in different words. That was proper enough and, indeed, inevitable if both books were to serve their purpose. They had to contain the more important facts of history. This being so, no sound reason remains for saying that the accused book in its text is a copy of any substantial part of the copyrighted book. True it is that at times one or more descriptive words used in the plaintiff's book are utilized to describe the same thing in the defendants' but in no material respect are the same words gathered together sufficiently to show that the copyrighted work was copied. Mere similarity of phraseology which has, indeed, become more or less stereotyped in some respects in school histories is a weak support for a charge of infringement. See, Sampson & Murdock v. Seaver-Radford Co., 1 Cir., 140 F. 539. The trial judge was apparently led into error in holding that the text of the defendants' book infringed the copyright by his conception that in a case of this kind the defendants could escape liability only by

proving what he called "an intellectual alibi". That seems to have been a manner of holding that the plaintiff did not have the burden of proving the facts necessary to establish infringement and could prevail merely on the lack of the kind of defense he called "an intellectual alibi". This conception seems to have colored his conclusion that infringement had been legally shown for he said "* * * when I refer to proving an intellectual alibi in a cause like this, I mean that the defendant must show, not merely that it might have got its embodiment or arrangement of ideas from some sources other than the plaintiff's book, but that it actually did do so". We cannot, however, agree that such is the law. The burden of proof was on the plaintiff. It had to show by a fair preponderance of all the evidence that one or more of the defendants was guilty of the tort charged in the complaint. As Judge Hough said in Frankel v. Irwin, D.C., 34 F.2d 142, 143, "Infringement of copyright is a tort, the burden of proving which is on the plaintiff, and it can be committed in only one way: By copying some substantial part of that which is lawfully copyrighted".

As the plaintiff's proof has failed to establish infringement in any part of the text of the accused book, the decree must be reversed in that respect and the bill dismissed as to appellants Pikholtz and Fraser.

The so-called cartoon illustrations which make the defendants' book a "visualized" treatment of the subject matter cannot fare the same as the text itself. The lady who drew them admittedly had before her the cartoon pictures in the plaintiff's book. In both books the illustrations are rather fanciful portrayals in form designed to catch the eye and hold the attention of the reader until the same fact or facts or their background strikes home. On page 15 of the plaintiff's book appears a picture entitled "The Duel For Empire" showing a map over which two figures of men, one labelled England and one France, are fighting with swords for Canada and the Ohio Valley. On page 14 in the accused book is found a picture entitled "Rivalry on Three Continents" showing the upper portion of what apparently represents the northern hemisphere with a cobra partly behind it labelled "France" fighting a Mongoose labelled "England". In smaller figures two swordsmen are shown engaged in a duel and the picture bears the words "Age old Battle of the Mongoose and the Cobra". It has been explained that the defendants' illustration was at first drawn without the two duelists but then it was thought that too great emphasis had been put upon animal passions instead of human passions and for that reason the two swordsmen were put in. By so doing it seems clear that a substantial part of the plaintiff's picture was copied. It was made to express the same idea in substantially the same way it was expressed by the plaintiff's illustration. The evidence directly points to a taking of a material part of the plaintiff's mode of expression by copying in effect what the plaintiff had done.

On page 46 of the plaintiff's book is a picture entitled "Caught Between Two Fires" showing a sailing ship labelled "U. S. Foreign Trade" being shot at with a cannon on one side behind which stands a man labelled "England" and on the other side stands a man labelled "Napoleon" behind a cannon which is also being shot at the ship. On page 48 of the defendants' book appears a picture showing a figure of Uncle Sam on a sailing ship in the English Channel. On land at his right stands a cannon pointing toward him and above it are the words "Orders in Council"; on land at his left there is also a cannon aimed at him and the words "Continental Blockade". Here again the pictorial representation of the shipping trade of this country caught in the crossfire between England and France is unmistakable and the substantial copying of the copyrighted manner of expression clear. As much is true of a cartoon entitled "Seven Giant Strides Across the Continent" found on page 73 of the plaintiff's book and one entitled "Westward to the Pacific—A Century of Manifest Destiny" appearing on page 70 of the defendants'. Both depict a map of continental United States with words and figures to show when and how the various parts were acquired and, when purchased, of whom and for how much. Both show that Florida was purchased from Spain in 1819 for $5,000,000. It is argued that this shows the copying in the defendant's picture since the purchase was by way of assumption of debts and not for cash. The defendants' picture contains a notation in a scroll over what would be the southern part of California that Mexico received $18,500,-

000; while in the plaintiff's a bag of money stands at about the same place on which appears "18,500,000.00 to Mexico". It is said that this was a mutual mistake showing copying because only $15,000,000 was actually paid to Mexico while the remainder was paid to Americans who held claims against Mexico. Another inaccuracy is said to be the depicting of the northern boundary of the Louisiana Purchase in both cartoon illustrations as a straight line. Though that may have been a bit misleading as it did not clearly show that a triangular piece at the northeastern corner was acquired from England in 1818, the line in the plaintiff's illustration was marked by the words "Treaty Line of 1818" and in the defendants' by "British Treaty Line of 1818". These common mistakes, if such they were, would fairly show access but that is admitted, and the problem here is only to decide whether a substantial part of the copyrighted mode of expression was copied; the opportunity to do that being shown. As already indicated we think it was.

So, too, on page 84 of the plaintiff's book is an illustration entitled "The Rise of the War Fever". A thermometer is shown in which the mercury has gone up to break the glass at the top. At that point the word "Warfare" is placed and part way down under it the word "Hatred" and still lower the word "Bitterness". At the right the figures and words "1861 Firing on Fort Sumter—Civil War". And under them in separate lines practically filling the space down to the bulb of the thermometer are dates and important events which occurred on them in American history leading up to the Civil War. The defendants' book on page 91 shows "The Final Blow" by using an illustration of a blow tester having a bell at the top labelled "Civil War" to be rung by a weight driven upwardly when the end of a moveable plank is struck. The bell has been rung by a man labelled "Sectionalism" who has hit the plank with a mallet designated as "Slavery". Substantially the same dates and events are given as they were in the plaintiff's illustration.

Without describing the illustrations in detail, it is enough to say that there is likewise evidence to support the finding below that the illustration at page 170 of the plaintiff's book entitled "The Long Road Still Ahead" was copied in making that of the defendants' book on page 95 en-

titled "Three 'Milestones' Have Already been Passed—But the Burden Still Remains".

Finally there is a chart at page 250 of the plaintiff's book entitled "Amendments to the Constitution" which shows a large board at the top on which appears "Constitution of the United States" under which is the word "Preamble" and under that in separate lines "Article I—Legislative Department" and the other articles with a similar description of their subject matter. Hanging by rings underneath are three smaller boards each holding by similar rings three more which hang below on rings between them. They show the amendments and their dates. The defendants' book on page 230 depicts the capitol building on and below the dome of which are the words "Constitution of the United States". The outer edges of what are apparently the steps each bear writing showing what the eight articles deal with in almost the words used in the plaintiff's illustration. There are wings of the building to the right and to the left having pillars on which the various amendments are described shortly about as in the plaintiff's illustration, the twenty-first amendment being noted on a pillar at the far right in the hands of a figure labelled "F. D.R." who is shown putting it in place. Underneath are the words, "Is It Justifiable to Show a President Adding an Amendment to the Constitution? Discuss." Though the plaintiff urges this as almost conclusive evidence of copying it appears to be the one of all the illustrations mentioned that is not a substantial copy of the plaintiff's. Practically all that relates to the general treatment in the drawing is decidedly different from the plaintiff's. They are each of a distinctive character and entirely unlike except as to what they teach which the subject matter requires to be practically the same. It is in this respect that the words used in both are, indeed, much the same but when dealing with such a subject matter we venture to suggest that two competent people working entirely independently could hardly be expected to make such concise notations without as many duplications. Here we think the plaintiff failed to carry the burden of showing that any substantial part of its illustration was copied.

Decree reversed in part in accordance with the foregoing opinion and bill dismissed with costs as to appellants Pikholtz and

694

Fraser; it is affirmed as to appellant College Entrance Book Company, Inc., in so far as the cartoon illustrations mentioned have been found to infringe the copyright.

MANTON, Circuit Judge (dissenting).

I agree with Judge CHASE'S opinion in so far as it reverses the decree below. I think that the decree should be reversed in its entirety. The cartoon illustrations and the phrases used by defendants and referred to as an infringement are so dissimilar in language and appearance as to negative copying by defendants. With outstanding rectitude, defendants have attempted to state and illustrate historical facts without regard to plaintiff's work. The decree should be reversed.