Isaac Michael RUBIN, Plaintiff,
Appellee,

v.

BOSTON MAGAZINE COMPANY and
D. Herbert Lipson, Defendants,
Appellants.

No. 80–1549.

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1981.

Decided March 26, 1981.

Joseph D. Steinfield, Boston, Mass., with whom Gilbert B. Kaplan and Hill & Barlow, Boston, Mass., were on brief, for defendants, appellants.

Jeffrey F. Jones, Boston, Mass., with whom Eric F. Menoyo, and Palmer & Dodge, Boston, Mass., were on brief, for plaintiff, appellee.

Before CAMPBELL and BREYER, Circuit Judges, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

This is an appeal from a judgment for plaintiff in a non-jury copyright case in which none of the primary facts is disputed.

The plaintiff, Isaac Michael Rubin, now a professor of social psychology at Brandeis University, in 1969 submitted in partial fulfillment of the University of Michigan requirements for the degree of doctor of philosophy a dissertation entitled "The Social Psychology of Romantic Love" for which on May 4, 1970 he secured Copyright No. 146094. The dissertation purports to establish and validate a so-called "construct of romantic love" to be used in research by psychologists concerned with social relationships. The dissertation is based upon the theory that the three critical components of a relationship of love are "affiliative and dependent need," "predisposition to help" and "exclusiveness and absorption." The dissertation sets forth at pages 44–45 a "love scale" and "liking scale" which consist of 26 questions designed to elicit one's feeling about another.

Dr. Rubin used *verbatim* his scales in his .article "Measurement of Romantic Love" appearing in the October 1970 issue of *Jour-*

* Of the District of Massachusetts, sitting by designation.

nal of *Personality and Social Psychology.* The American Psychological Association, Inc. on November 2, 1970 secured copyright No. B624309 on that issue, and on March 20, 1970 assigned to Dr. Rubin so much of that copyright as covered his article. Dr. Rubin again used verbatim his scales in a scholarly book entitled *Liking and Loving: An Invitation to Social Psychology.* The publisher Holt, Rinehart and Winston, on October 8, 1974, secured on that book copyright No. A 582977 which on March 27, 1978 it assigned to Dr. Rubin.

On February 14, 1975 *Reader's Digest* sought Dr. Rubin's permission to use his scales in one of its articles, and promised to "pay you well if it comes off." But Dr. Rubin declined to give such permission.

The defendant Boston Magazine Company is the owner of, and the defendant D. Herbert Lipson is the publisher of, a magazine called *Boston.* The August 1977 issue of *Boston* has an article having as its main title "OOO–OOO–WAH OOO–OOO–WAH WHY DO FOOLS FALL IN LOVE?" The cover of the magazine features the article under the headline "How's Your Love Life?" and the sub-caption "Who Turns You On and Why? Science may have the answer." The body of the article refers to scholarly publications of many psychologists and sociologists, including Dr. Rubin, and sets forth *verbatim* Dr. Rubin's scales in a large box entitled "The Test of Love. How to Tell If It's Really Real."

The author of the *Boston* article admitted that he copied the scales from either Dr. Rubin's article in the October 1970 *Journal of Personality and Social Psychology* or his book *Liking and Loving: An Invitation to Social Psychology.*

Upon the basis of the foregoing evidence the district judge in a brief statement from the bench found that the defendant Boston Magazine Company copied "from at least

two of Dr. Rubin's copyrighted articles" and that this "was done in a purely commercial, hopefully money-making, non-scientific way" and was not "intended to acquaint the Greater Boston reading public with the level of psychological and scientific research in the community." The district court awarded the plaintiff $5,000 damages and a $2,500 attorney's fee, and entered judgment for the plaintiff[1] for those amounts.

It is agreed that because the claimed infringements occurred in 1977 this case, in accordance with § 112 of the Copyright Act of October 19, 1976, 90 Stat. 2541, 2600, is governed by the 1909 Copyright Act, Act of March 4, 1909, 35 Stat. 1075 *et seq.*, formerly 17 U.S.C. § 1 *et seq., Iowa State University Research Foundation, Inc. v. American Broadcasting Companies, Inc.*, 621 F.2d 57, 60 n.5 (2d Cir. 1980).

The first argument presented to us by defendants is that the scales are not copyrightable because they are a scientific discovery.

■ Under the Copyright Act of 1909, as under earlier copyright law and indeed as under § 101(b) of the Copyright Act of 1976, 17 U.S.C. § 102(b), there is no copyright protection for an idea, concept, principle or discovery. *Mazer v. Stein*, 347 U.S. 201, 217–218, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954); *Baker v. Selden*, 101 U.S. 99, 102–103, 25 L.Ed. 841 (1879); *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 678–679 (1st Cir. 1967). See 1 Nimmer on Copyright (1980) § 2.03[D]. But there may be a valid copyright on an original form of expression of an idea, concept, or discovery. *Ibid.*

■ The basis of the defendants' contention that the scales are a discovery is the claim made by Dr. Rubin in his article in the *Journal of Personal and Social Psychology*, in his book *Liking and Loving*, and in

1. The record does not show any findings with respect to defendant Lipson. Nor does the main text of the judgment indicate from whom the plaintiff is entitled to recover. However, the heading of the judgment refers to Boston Magazine, *Inc.* [sic] and D. Herbert Lipson. Inasmuch as all parties have treated the individual Lipson as jointly responsible with Boston Magazine *Company* for the August 1977 issue of *Boston*, we, in accordance with the implied assumptions in all of the briefs and oral arguments, shall construe the district court's findings as applicable to both defendants, and its judgment as binding both defendants.

his testimony in the trial court that his scales are a scientifically valid method of determining whether two persons are in love. But whatever may be the contribution of the scales to the behavioral sciences, they are certainly not a "discovery" as that term is used in copyright law. In copyright law a "discovery" refers primarily to the disclosure of a hitherto unknown fact, principle, or theory. *See* 1 Nimmer on Copyright (1980) § 2.03[E]. The text of the scales makes it plain that they do not disclose any fact, principle or theory.

The scales are nothing but 26 questions which, on the basis of his theory that the essential components of a love relationship are "affiliative and dependent need," "predisposition to help" and "exclusiveness and absorption," Dr. Rubin with some degree of originality phrased and organized into two tables. Dr. Rubin does not claim copyright protection for his theory as to the essential components of love. What he claims is copyrightable are the scales setting forth questions based upon that theory. The scales are subject to copyright on the ground that they are an original form of expression. They have at least as much originality as other writings which have been thought subject to copyright. *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99 (2d Cir. 1951), 1 Nimmer on Copyright (1980) § 2.01[B].

■ It is of no significance that the scales are in the form of questions. United States Constitution Article I § 8, ch. 8 gives Congress power to secure to authors the exclusive right to their respective "writings," and § 4 of the Copyright Act of 1909, formerly 17 U.S.C. § 4 permits copyright for "*all* the writings of an author." Since the term "writings," as used in the Constitution and in the statute, is intended to be read expansively, *International News Service v. Associated Press*, 248 U.S. 215, 234, 39 S.Ct. 68, 63 L.Ed. 211 (1918), *Deutsch v. Arnold*, 98 F.2d 686, 688 (2d Cir. 1938), the term covers sets of questions as well as other forms of expression.

■ Nor are the scales uncopyrightable because to give copyright protection to the scales will give Dr. Rubin a monopoly of the theory on which the scales are based. There are an infinite number of ways of stating Dr. Rubin's theory and an infinite number of questions which may be asked in order to find out whether two persons have the characteristics to which the theory refers.

The defendants' next principal contention is that even if the scales are a copyrightable component of the plaintiff's dissertation, nonetheless the defendants are not infringers because they made only a "fair use" of the plaintiff's copyrighted dissertation.

■ The doctrine of fair use had its origin in the opinion of Mr. Justice Story in *Folsom v. Marsh*, No. 4,901, 9 F.Cas. 342 (C.C.D.Mass.1841). "Fair use" is a "privilege in others than the owner of a copyright to use copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner." Ball, The Law of Copyright and Literary Property (1944) 260 quoted in *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir. 1966) *cert. den.* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) and in *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1174 (5th Cir. 1980). "The fundamental justification for the privilege lies in the constitutional purpose in granting copyright protection in the first instance, to wit 'To Promote the Progress of Science and the Useful Arts.' U.S.Const. art. 1 § 8." *Rosemont Enterprises, Inc. v. Random House, Inc. supra*, 307. In *Iowa State University Research Foundation, Inc. v. American Broadcasting Co.*, 621 F.2d 57, 60 (2d Cir. 1980) Chief Judge Kaufman stated:

The doctrine of fair use, originally created and articulated in case law, permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster. The cases emphasize that resolution of a fair use claim "depends on an examination of the facts in each case [and] cannot be determined by resort to any arbitrary rules or

fixed criteria." *Meeropol v. Nizer*, 560 F.2d 1061, 1068 (2d Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978). Evolution of the doctrine in these cases, however, suggests four commonly recognized factors that have traditionally been consulted in fair use cases: [5] (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of material used in relation to the copyrighted work as a whole; and (4) the effect of the use on the copyright holder's potential market for the work. See 3 Nimmer on Copyright § 13.05[A] (1979); 17 U.S.C. § 107 . . .

[5] The four "fair use" factors are now codified in U.S.C. § 107 of the 1976 Copyright Act. The new statute, however, does not govern the instant case . . . .

With reference to the guiding but not controlling factors listed in the *Iowa State University Research Foundation* case and now incorporated in § 107 of the 1976 Act, we make the following observations.

■ The defendants did not use the copyrighted scales "for purposes such as criticism, comment, news reporting, teaching . . . scholarship or research." See § 107 of Copyright Act of 1976, 17 U.S.C. § 107. The defendants' claim that their purpose "was to acquaint the community with research" is belied by the format and the contents of the alleged infringing publication. They irrefutably showed that the copyrighted material was used as a quiz to entertain readers of a magazine of general circulation. Plainly, the district judge correctly concluded that the defendants' use of the plaintiff's copyright was "of a commercial nature."

■ Dr.Rubin's scales were part of a dissertation prepared as a result of extensive research and expenditure of time, pursuant to a grant to Dr. Rubin from the National Institute of Mental Health, a part of the former Department of Health, Welfare, and Education. The defendants seek to justify their use of the copyrighted material on the ground that, as disclosed in 45 CFR § 8(b), HEW had a policy that "the results of research supported by grants of public monies should be utilized in the manner which would best serve the public interest." That policy has been achieved here by making freely available to the public any theories disclosed in Dr. Rubin's dissertation. There is nothing in HEW's policy indicating that Dr. Rubin's form of expressing those theories or his questionnaires based on those theories should be made freely available. The defendants also seek to justify their use of the copyrighted material on the ground that as a scientific writing it is, under the doctrine of *Sampson & Murdock Co. v. Seaver-Radford Company*, 140 Fed. 539, 541 (1st Cir. 1905), entitled only to limited protection. However, that doctrine refers only to the limited protection of scientific material when used for scientific, scholarly, news reporting or like purposes; not when used solely for commercial gain. *Loew's Inc. v. Columbia Broadcasting System*, 131 F.Supp. 165, 175 (S.D.Cal.1955), aff'd *sub nom. Benny v. Loew's Inc.*, 239 F.2d 532 (9th Cir. 1956), aff'd 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583 (1958).

The scales which the defendants copied were an essential part of the copyrighted dissertation. They stated in interrogative form an analysis based on the theory set forth in the dissertation. Cf. *Wainright Securities Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 96 (1977), *cert. denied* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978). In the words of *Meredith Corp. v. Harper & Row Publishers, Inc.*, 378 F.Supp. 686, 690, n.12 (S.D.N.Y.1974), the scales were "of critical importance to the work as a whole and taken by the infringer in order to save the time and expense incurred by the copyright owner."

The defendants' use of the plaintiff's copyrighted material clearly affected the plaintiff's potential market for the scales. Before defendants had used the scales, *Reader's Digest* had shown an interest in paying the plaintiff for a license to use them. It may reasonably be inferred that after defendants' use, *Reader's Digest* and other publishers would be less inclined to pay the plaintiff for use of his material in a popular magazine.

In short, the district court did not err in concluding that the defendants had not borne the burden of showing that they made only a fair use of the plaintiff's copyrighted material.

Finally, the district court's award of attorney's fees did not involve any error of discretion. *F. W. Woolworth Co. v. Contemporary Arts Inc.*, 193 F.2d 162, 167 (1st Cir. 1951), aff'd 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952).

*Affirmed.*